# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITY AND EXCHANGE COMMISSION,  )
                                    )
        Plaintiff,                  )
                                    )   MISC. No. 06-00380(JR)
    v.                              )
                                    )
BIOPURE CORPORATION, THOMAS MOORE,  )
HOWARD RICHMAN, and JANE KOBER,     )
                                    )
        Defendants.                 )
_____)

## DECLARATION OF GILLIAM B. CONLEY

I, Gilliam B. Conley, declare as follows:

1. I am the Director of the Division of Inspections and Surveillance ("DIS") in the Food and Drug Administration ("FDA"), Center for Biologics Evaluation and Research ("CBER"), Office of Compliance and Biologics Quality ("OCBQ").

2. I have worked for FDA since 1995, and I have been in my current position since February, 2005. Previously I served as the Chief, Program Surveillance Branch, one of the two branches in DIS. As the Director, I am responsible for numerous inspection, review, and compliance functions executed by my staff. These functions include the receipt and review of reports of fatalities related to transfusion or donation of blood and blood products. My office also receives and reviews Biological Product Deviation Reports (including Human Tissue and Cellular and Tissue-Based Product Deviation Reports), which are received from manufacturers upon the discovery of manufacturing

deficiencies for product already in distribution. My staff works with other CBER offices to monitor and review adverse event reports and respond as needed to protect the public health. My staff also coordinates pre- and post-approval inspections of the manufacturers of biological products, executes CBER's Bioresearch Monitoring program, tracks and reports potential shortages of biological products, develops inspection guidance used by FDA's Office of Regulatory Affairs ("ORA") investigators, writes inspection assignments either for cause or for pre-approval assessment, consults with ORA regarding CBER products, and communicates with other federal agencies regarding their requests to share information under CBER's purview (as authorized by 21 C.F.R. § 20.85). Currently, I supervise 14 Consumer Safety Officers, including two Branch Chiefs.

3. I am CBER's principal contact with respect to document sharing pursuant to 21 C.F.R. § 20.85, which authorizes FDA to share documents with other federal agencies. Depending on the origin of the request for information, the request may come directly to me or may come through ORA's Office of Enforcement ("OE"). My staff collects documents responsive to the request, redacts trade secret information, and forwards the information to the requesting federal agency with a cover letter that explicitly defines the limitations of that agency's use of these documents. That is, because only trade secret information was redacted, the documents may contain other information not publicly releasable.

Therefore, the other agency must seek FDA's authorization to further release documents received under 21 C.F.R. § 20.85 and FDA must review each document and redact other non-disclosable information including, but not limited to, personal privacy, deliberative process, and confidential commercial information. If the requesting federal agency wishes to further release the documents, we work with the Office of Chief Counsel ("OCC") and with OE to perform any necessary additional redaction of the documents and to approve further release consistent with applicable laws and the regulations. We consult with CBER's Freedom of Information ("FOIA") staff in our Office of Communications, Training and Manufacturers' Assistance ("OCTMA") when there are questions about appropriate redactions.

4. When documents from CBER are to be provided pursuant to a subpoena, we assist CBER's FOIA staff in gathering such documents. However, OCTMA processes all redactions and manages the production.

5. The statements made in this declaration are based upon my personal knowledge, upon information made known to me in my official capacity, and upon information about which I have become knowledgeable.

6. I am familiar with the referenced case and the Motion to Compel filed by Thomas A. Moore ("Moore"). I am aware of the efforts made by FDA to provide documents and testimony to the remaining defendants, including Moore.

7. On September 14, 2005, the Securities and Exchange Commission ("SEC") filed a civil enforcement action against Biopure Corporation and several former and present officers. FDA is not a party to the case. However, during the course of SEC's investigation of Biopure between 2003 and 2005, FDA provided SEC with documents and testimony from FDA employees after receiving written requests for such information from SEC pursuant to FDA regulations, 21 C.F.R. §§ 20.85 and 20.1.

8. In 2005, pursuant to 21 C.F.R. § 20.85 and FDA's instructions included with the documents sent to SEC, SEC asked FDA for permission to release the documents that SEC had obtained from FDA. SEC also asked for permission to release transcripts of all depositions taken of FDA employees. FDA subsequently approved SEC's requests, and provided appropriately redacted versions of the documents to SEC with instructions concerning their release to parties other than Biopure. It is my understanding that all such documents and transcripts were ultimately provided to Moore pursuant to a confidentiality agreement between Moore and Biopure.

9. On March 24, 2006, Moore submitted a request to FDA for documents and testimony under 21 C.F.R. §§ 20.2 and 20.1. Moore's request for documents identified nine separate categories of documents. Simultaneously, counsel for Moore issued third-party subpoenas for such documents and testimony to FDA. On April 3, 2006, FDA informed Moore's counsel that, pursuant to

4

then-applicable precedent concerning the applicability of Rule 45 to federal agencies, his subpoenas were unenforceable on FDA. FDA also explained why complying with the subpoenas would be unduly burdensome. FDA noted, however, that Moore's requests for testimony and documents pursuant to 21 C.F.R. §§ 20.2 and 20.1 would be reviewed in accordance with agency procedures.

10. Given the situation described in paragraph 9 above, SEC attempted to expedite the release of documents to the defendants by requesting the documents from FDA under 21 C.F.R. § 20.85 while simultaneously requesting FDA's permission to further release the documents to all the defendants. SEC's request, dated April 21, 2006, sought seven of the nine categories of documents identified in Moore's request to FDA and included a request to further release the documents. SEC did not request (1) communications between FDA and SEC concerning the defendants in SEC's case, and (2) documents concerning the policy of inter-agency cooperation between FDA and SEC. It was my understanding that the documents provided to SEC would thereafter be turned over to the defendants in SEC's case only after Biopure provided a release that the documents could be released to defendants, such as Moore, who are no longer Biopure employees. SEC was asked to provide FDA with documentation of Biopure's release.

11. Because SEC's April 21, 2006 request was submitted under 21 C.F.R. § 20.85, my office had primary responsibility for obtaining responsive documents. Because several of the requests

5.

concerned particular FDA employees, contacts were made as necessary by email, phone, and face-to-face with each of those identified in the request. Responsive documents were collected, reviewed, and redacted as appropriate for further release.

12. On June 20, 2006, FDA provided SEC with approximately 400 pages that were responsive to SEC's request for documents under 21 C.F.R. § 20.85. In providing the documents to SEC, FDA noted that trade secret information had been redacted from the documents pursuant to 21 U.S.C. 331(j), which prohibits the release of such information. However, deliberative process information was not redacted (because FDA waived the privilege); nor was confidential commercial information belonging to Biopure redacted. SEC was instructed that release to defendants could occur only with Biopure's consent and the provision to FDA of documentation of Biopure's consent.

13. Shortly before these documents were provided to SEC, the Court of Appeals for the D.C. Circuit issued an order in an unrelated case that held that the government was subject to Rule 45 subpoenas. Thereafter, FDA initiated a search for documents responsive to the two categories of documents that were in Moore's third-party subpoenas but not in SEC's request to FDA pursuant to 21 C.F.R. § 20.85.

14. On July 28, 2006, Moore contacted FDA and the Department of Justice ("DOJ") and requested the production of

additional documents, such as email attachments, that Moore believed should have been provided with FDA's June 28, 2006 response. After receiving this request, my office reviewed the package of information that had previously been forwarded and confirmed that we had, indeed, provided the email messages but overlooked the email attachments. My staff re-contacted those who provided the original documents to obtain copies of the attachments.

15. On August 10, 2006, Moore filed a motion to compel in the United States District Court for the District of Columbia. Moore's motion noted that SEC's request to FDA omitted two categories of documents that were contained in Moore's subpoenas but omitted from SEC's request under 21 C.F.R. § 20.85: (1) communications between FDA and SEC concerning the defendants in SEC's case, and (2) documents concerning the policy of inter-agency cooperation between FDA and SEC.

16. On or about August 17, 2006, FDA provided SEC with approximately 170 pages of additional documents (the missing email attachments) that were gathered in response to Moore's July 28, 2006, letter to FDA and DOJ. As with FDA's June 28, 2006 release, these documents were redacted to remove trade secret information, and SEC's release to the defendants was again contingent upon Biopure's pre-release review and consent with respect to its confidential commercial information ("CCI").

7

17. Additionally, my office met with the FDA employees named in Moore's request to verify that all responsive materials had been produced. Following this meeting, two employees performed an additional check of their files, which resulted in the identification of additional documents not previously released. Because the documents were not limited to SEC's request under 21 C.F.R. § 20.85, but were also responsive to Moore's subpoenas, these documents were provided to CBER's OCBQ for review and redaction before being released to SEC on September 14 and 22, as described in paragraphs 19-20 of this declaration.

18. On September 14, 2006, the Department of Justice ("DOJ"), on behalf of FDA, provided counsel for Moore with 200 pages that were responsive to his request for documents concerning the policy of inter-agency cooperation between FDA and SEC. As described in paragraph 10 of this declaration, this was one of the two categories of documents that was identified in Moore's subpoenas but not in SEC's request to FDA pursuant to 21 C.F.R. § 20.85. Because the responsive documents did not contain any confidential commercial information belonging to Biopure, they were provided directly to the Moore.

19. In addition to the pages provided directly to Moore on September 14, 2006, FDA also sent to the SEC 581 pages for subsequent release to Moore after Biopure pre-release review and

8

consent to release its CCI. The 581 pages also included documents located in response to Moore's subpoena request for communications between FDA and SEC concerning the defendants, which, as described in paragraph 10 of this declaration, was one of the two categories of documents that had not been included in SEC's request for documents pursuant to 21 C.F.R. § 20.85. In addition, this release included documents provided by one of the FDA employees who completed a supplemental search, as described in paragraph 17 of this declaration.

20. On September 22, 2006, FDA provided SEC with 122 additional pages that had been located by the second FDA employee who conducted a supplemental search for documents. Although DOJ's September 14 letter to Moore indicated that 175 pages had been recently gathered, only 122 were found to be responsive and non-duplicative. As with FDA's June 28, August 17, and September 14 releases, these documents were redacted to protect trade secret information and further release by SEC was contingent on Biopure's consent to release its CCI.

9

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

*[signature]*

Gilliam B. Conley
Director, Division of Inspections and Surveillance
Food and Drug Administration
Center for Biologic Evaluation and Research
Office of Compliance and Biologic Quality

Executed on October 3, 2006, in Rockville, MD

10